UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------×

CARYN HYMAN, *a/k/a* ALIZA HYMAN,

      *Plaintiff,*                                     17 CV 7307

      *v.*                                             **COMPLAINT**

ALLURE CARE MANAGEMENT LLC, *d/b/a* THE
ALLURE GROUP, WILLIAMSBURG SERVICES, LLC
*d/b/a* BEDFORD CENTER FOR NURSING AND
REHABILITATION, *and* MW GROUP, LLC, *d/b/a* RSI,

      *Defendants.*

------------------------------------------------------------------------×

      Plaintiff Caryn Hyman, a/k/a Aliza Hyman, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants Allure Care Management LLC, d/b/a The Allure Group ("Allure"), Williamsburg Services, LLC, d/b/a Bedford Center for Nursing and Rehabilitation (the "Bedford Center"), and MW Group, LLC, d/b/a RSI (RSI) (collectively, "Defendants"), as follows:

**PRELIMINARY STATEMENT**

      1.     Ms. Hyman, who is 59 years old, worked for Defendants as Director of Recreation at the Bedford Center, a nursing and rehabilitation facility operated by Allure, a healthcare organization which manages six nursing and rehabilitation centers in the New York metropolitan area. In and around March 2017, Ms. Hyman began reporting to a new supervisor, Israel Frankel, who made several derogatory comments about older workers during Ms. Hyman's employment, such as, "Why don't you get rid of her? She's so old," in reference to a 75-year-old employee, and "He stayed way past his time," in reference to a former employee who had been in his 60s when he left the Bedford Center, as well as comments to Ms. Hyman herself, such as, "What, you don't see it? Are you that old?" and "The department needs young blood."

1

Ms. Hyman complained about the age discrimination to Allure's CEO, but nothing was done to address the discrimination or prevent further discrimination and retaliation. Shortly after Ms. Hyman's complaint, Defendants terminated her employment without explanation. Weeks after her termination, Ms. Hyman learned that she had been terminated for purportedly "causing harm to residents by letting them have smoking paraphernalia." Ms. Hyman never provided residents with any smoking paraphernalia except in accordance with Defendants' resident smoking policies and, as Director of Recreation, was not responsible for monitoring whether residents were smoking. In addition, even if the allegation were true, providing residents with smoking paraphernalia was not a serious enough violation to merit Ms. Hyman's termination. After terminating Ms. Hyman, Defendants replaced her with a 24-year-old woman who was less qualified, having never held a director-level position.

2. Ms. Hyman seeks damages and costs against Defendants for discriminating against her based on her age by subjecting her to a hostile work environment and, ultimately, terminating her employment, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.*, and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq.*

3. Ms. Hyman also seeks damages and costs against Defendants for retaliating against her for her complaints about age discrimination, in violation of the ADEA and NYCHRL.

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

4. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the ADEA.

5. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

7. All conditions precedent to maintaining this action have been fulfilled. Ms. Hyman filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on August 23, 2017, and more than 60 days have passed from the day she filed her charge. The EEOC has not issued Ms. Hyman with a notice that its investigation has concluded.

## TRIAL BY JURY

8. Plaintiff respectfully requests a trial before a jury.

## PARTIES

9. Ms. Hyman, at all times relevant hereto, was and is a resident of Kings County in the State of New York.

10. Upon information and belief, at all times relevant hereto, Allure was and is a limited liability company organized under the laws of the State of New York with its principal corporate offices located at 691 92nd Street, Brooklyn, New York 11228 in Kings County.

11. Upon information and belief, at all times relevant hereto, the Bedford Center was and is a limited liability company organized under the laws of the State of New York located at 40 Heyward Street, Brooklyn, New York 11249 in Kings County. Upon information and belief, the Bedford Center is an affiliate of Allure.

12. Upon information and belief, at all times relevant hereto, RSI was and is a limited liability company organized under the laws of the State of New York with its headquarters located at 20E Robert Pitt Drive, Monsey, New York 10952 in Rockland County. Upon information and belief, RSI performs payroll and human resources functions for Allure and the Bedford Center, including, but not limited to, hearing employee complaints and ensuring that Allure and the Bedford Center are compliant with pertinent anti-discrimination statutes.

## STATEMENT OF FACTS

13. On or about February 11, 2013, Ms. Hyman began working as Director of Recreation at the Bedford Center, a nursing and rehabilitation facility owned and operated by Allure.[1]

14. Upon her hire, Ms. Hyman reported directly to Chaim Teitelbaum, the Bedford Center's Administrator at the time.

15. As Director of Recreation, Ms. Hyman's job responsibilities included preparing activities for the Bedford Center's residents and supervising eight to ten employees in the Bedford Center's Recreation Department.

16. For the first four years of her employment with Defendants, Ms. Hyman received highly positive feedback and consistently fulfilled her job duties.

17. In and around March 2017, Defendants hired Israel Frankel, who is in his 30s, to replace Mr. Teitelbaum as the Bedford Center's Administrator, making Mr. Frankel Ms. Hyman's direct supervisor.

18. From the beginning of his employment at the Bedford Center, Mr. Frankel treated Ms. Hyman with hostility and aggression because of her age.

---

[1] At the time of Ms. Hyman's hire, the Bedford Center was operating under the name "Keser Nursing and Rehabilitation."

4

19. Even though Ms. Hyman had been a reliable and dedicated employee for years, Mr. Frankel began to reprimand her for minor or fabricated infractions for the first time in her career at the Bedford Center.

20. For example, Mr. Frankel falsely accused Ms. Hyman of violating HIPAA by discussing confidential information with Mr. Teitelbaum after he had left the Bedford Center.

21. On another occasion, Mr. Frankel falsely claimed that Ms. Hyman had "harassed" one of the Bedford Center's secretaries.

22. None of these complaints were, or could be, substantiated, as they were baseless and designed by Mr. Frankel to try to have Ms. Hyman terminated.

23. Until reporting to Mr. Frankel, Ms. Hyman had never received any discipline, warnings, write-ups, or the like; on the contrary, she was consistently praised by her supervisors and coworkers alike.

24. Mr. Frankel wanted Ms. Hyman terminated because of her age, as he had a demonstrated animus against older workers, which he acted upon when making employment decisions.

25. For example, in and around early April 2017, Mr. Frankel began to pressure Ms. Hyman to terminate Sofia Spivak, a 75-year-old employee in Ms. Hyman's department, because of Ms. Spivak's age, saying, "Why don't you get rid of her? She's so old. She can hardly walk. She looks like one of the residents."

26. Mr. Frankel made similarly discriminatory comments about Mr. Teitelbaum, stating openly that Mr. Teitelbaum, who was in his 60s when he resigned from the Bedford Center, had "stayed way past his time."

27. In and around mid-April 2017, Mr. Frankel again turned his aim on Ms. Hyman, this time directly asking Ms. Hyman, "How old are you?"

28. Surprised by the unprompted personal question, Ms. Hyman responded that she was 59 years old and asked Mr. Frankel why he was inquiring about her age, but he refused to explain and ended the conversation.

29. Mr. Frankel's inquiry about Ms. Hyman's age and his reaction to her request for an explanation distressed her, and, for the first time in her career with Defendants, Ms. Hyman began to worry that her age was being held against her.

30. Ms. Hyman's fears were borne out over the next several weeks as Mr. Frankel's discriminatory treatment worsened.

31. Mr. Frankel began to make overtly disparaging comments about Ms. Hyman's age, such as: "What, you don't see it [in reference to a paper on Mr. Frankel's desk]? Are you that old?"; "The department needs young blood"; and "Your ideas are ancient."

32. On or about April 30, 2017, Ms. Hyman learned that an opening for her job position had been posted on the job listing website Indeed.com when she received an application for her own position, Director of Recreation, in her email inbox.

33. Ms. Hyman was shocked, deeply upset, and—in light of Defendants' escalating marginalization of her because of her age—concerned that the Bedford Center planned to push her out and replace her with a younger employee.

34. Ms. Hyman complained about the age discrimination to Solomon Rubin, Allure's CEO, describing Mr. Frankel's discriminatory treatment and her concerns of being forced out because of her age.

6

35.     Mr. Rubin responded only, "I don't know.  Speak with the Administrator [i.e., Mr. Frankel]."

36.     Ms. Hyman then directly asked Mr. Rubin, "Is it something to do with my age?"

37.     Mr. Rubin did not respond, tacitly confirming that Defendants had a discriminatory motive in planning to terminate Ms. Hyman's employment.

38.     On or about the morning of May 23, 2017, Ms. Hyman began feeling unwell during a half-day work seminar in Manhattan and sent Mr. Frankel a text message notifying him that she was sick and would need to take the remainder of the day off.

39.     Shortly afterward, Ms. Hyman received a text message from Mayer Weinstein, the President of RSI, a third-party company that performs payroll and human resources services for Allure.

40.     Mr. Weinstein told Ms. Hyman that her employment was being terminated, effective immediately, but provided no explanation.

41.     Mr. Weinstein's text message stated only that May 23, 2017, was Ms. Hyman's last day of employment with Defendants; that Ms. Hyman would need to pick up any personal belongings that day, because the following day she would no longer be an employee; and that he would email Ms. Hyman a termination form.

42.     Ms. Hyman then received a termination letter via email from RSI's Payroll Representative, Yitty Weiss, dated May 23, 2017, which also did not give a reason for Ms. Hyman's termination.

43.     As Ms. Hyman had not received any explanation for her termination from Defendants, she contacted RSI to request Defendants' justification for her termination.

44. RSI's secretary, Yitty Weiss, told Ms. Hyman only that there were "serious" allegations against Ms. Hyman, but refused to give any explanation of what these purported allegations were, telling Ms. Hyman, "I can't say why you were fired."

45. Ms. Hyman then called Mr. Weinstein directly concerning her termination, but he told Ms. Hyman that he would not discuss the matter with her and hung up immediately afterward.

46. Ms. Hyman later received a termination letter that simply stated, "[C]onsidering the seriousness of the matter, it has been decided by the company to terminate your employment," without any explanation of what "the matter" was.

47. Weeks later, Ms. Hyman learned from a representative of the Department of Labor that Defendants had terminated her employment for allegedly "causing harm to residents by letting them have smoking paraphernalia."

48. Many of the Bedford Center's residents have signed "smoking contracts," which describe when they are permitted to smoke; the Bedford Center does not unilaterally prohibit residents from having "smoking paraphernalia."

49. Ms. Hyman never provided any resident with any "smoking paraphernalia," except in accordance with Defendants' resident smoking policies.

50. In addition, monitoring whether residents were smoking was not the sole responsibility of Ms. Hyman or her former department.

51. Any individual employee at the Bedford Center who saw residents violating the smoking policy—for example, by smoking outside of permitted times—was responsible for reporting such a violation.

52. There was no standardized procedure for reporting violations; employees could make reports to any individual at the Bedford Center, such as the Bedford Center's Administrator or any individual in the Bedford Center's Social Work Department.

53. Beyond this generalized duty to report violations that she personally witnessed, Ms. Hyman was not responsible for ensuring compliance with the Bedford Center's smoking policy.

54. The Nursing and Social Work Departments, not the Recreation Department, were responsible for checking residents' living quarters for illicit smoking paraphernalia and monitoring residents' compliance with the Bedford Center's smoking policies.

55. Finally, to Ms. Hyman's knowledge, no Bedford Center employee at the administrative level other than Ms. Hyman has ever been terminated for a violation of the Bedford Center's smoking policies because residents were seen smoking.

56. After her termination, Ms. Hyman learned that Defendants had filled her former position, Director of Recreation, with Pearl Rimpler, who is 24 years old, was less qualified than Ms. Hyman, and had never previously held a director-level position.

57. Ms. Rimpler started work at the Bedford Center the day after Ms. Hyman's termination.

58. Upon information and belief, Ms. Rimpler receives approximately the same salary as Ms. Hyman previously received, despite her inferior qualifications.

<b><u>CAUSES OF ACTION</u><br>FIRST CAUSE OF ACTION</b><br><b>Hostile Work Environment in Violation of the ADEA</b>

59. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 58 with the same force as though separately alleged herein.

60. The ADEA prohibits an employer from discriminating against employees over 40 years of age on the basis of age.

61. Ms. Hyman is over 40 years of age.

62. Defendants discriminated against Ms. Hyman on the basis of her age by subjecting her to a hostile work environment, including discriminatory comments and fabricated criticisms.

63. As such, Defendants have violated the ADEA.

64. As a direct and proximate consequence of Defendants' age discrimination, Ms. Hyman has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

65. Defendants' discriminatory treatment of Ms. Hyman was willful and/or in reckless disregard of Ms. Hyman's protected rights. Accordingly, Ms. Hyman is entitled to an award of punitive damages against Defendants.

## SECOND CAUSE OF ACTION
### Wrongful Termination in Violation of the ADEA

66. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 65 with the same force as though separately alleged herein.

67. The ADEA prohibits an employer from discriminating against employees over 40 years of age on the basis of age.

68. Ms. Hyman is over 40 years of age.

69. Defendants discriminated against Ms. Hyman on the basis of her age by terminating her employment because of her age.

70. As such, Defendants have violated the ADEA.

71. As a direct and proximate consequence of Defendants' age discrimination, Ms. Hyman has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

72. Defendants' discriminatory treatment of Ms. Hyman was willful and/or in reckless disregard of Ms. Hyman's protected rights. Accordingly, Ms. Hyman is entitled to an award of punitive damages against Defendants.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of the ADEA**

73. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

74. The ADEA prohibits an employer from retaliating against an employee for engaging in protected activity under the ADEA.

75. Ms. Hyman engaged in protected activity under the ADEA when she properly complained to Defendants about age discrimination prohibited under the ADEA.

76. Defendants retaliated against Ms. Hyman by terminating her employment.

77. As such, Defendants have violated the ADEA.

78. As a direct and proximate consequence of Defendants' retaliation, Ms. Hyman has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

79. Defendants' discriminatory treatment of Ms. Hyman was willful and/or in reckless disregard of Ms. Hyman's protected rights. Accordingly, Ms. Hyman is entitled to an award of punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

80. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81. The NYCHRL prohibits an employer from discriminating against employees on the basis of age.

82. Defendants discriminated against Ms. Hyman on the basis of her age by subjecting her to a hostile work environment, including discriminatory comments and fabricated criticisms.

83. As such, Defendants have violated the NYCHRL.

84. As a direct and proximate consequence of Defendants' age discrimination, Ms. Hyman has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

85. Defendants' discriminatory treatment of Ms. Hyman was willful and/or in reckless disregard of Ms. Hyman's protected rights. Accordingly, Ms. Hyman is entitled to an award of punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. The NYCHRL prohibits an employer from discriminating against employees on the basis of age.

88. Defendants discriminated against Ms. Hyman on the basis of her age by terminating her employment because of her age.

89. As such, Defendants have violated the NYCHRL.

90. As a direct and proximate consequence of Defendants' age discrimination, Ms. Hyman has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

91. Defendants' discriminatory treatment of Ms. Hyman was willful and/or in reckless disregard of Ms. Hyman's protected rights. Accordingly, Ms. Hyman is entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

92. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 91 with the same force as though separately alleged herein.

93. The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

94. Ms. Hyman engaged in protected activity under the NYCHRL when she properly complained to Defendants about age discrimination prohibited under the NYCHRL.

95. Defendants retaliated against Ms. Hyman by terminating her employment.

96. As such, Defendants have violated the NYCHRL.

97. As a direct and proximate consequence of Defendants' retaliation, Ms. Hyman has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

98. Defendants' discriminatory treatment of Ms. Hyman was willful and/or in reckless disregard of Ms. Hyman's protected rights. Accordingly, Ms. Hyman is entitled to an award of punitive damages against Defendants.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    A. For the first cause of action, damages to be determined at trial;

    B. For the second cause of action, damages to be determined at trial;

    C. For the third cause of action, damages to be determined at trial;

    D. For the fourth cause of action, damages to be determined at trial;

    E. For the fifth cause of action, damages to be determined at trial;

    F. For the sixth cause of action, damages to be determined at trial; and

    G. For such other and further relief as the Court deems just and proper.

Dated:     New York, New York
                December 15, 2017

                                           By:    s/ Walker G. Harman, Jr.
                                                           Walker G. Harman, Jr.
                                                           Edgar M. Rivera
                                                           THE HARMAN FIRM, LLP
                                                           220 Fifth Avenue, Suite 900
                                                           New York, NY 10001
                                                           (212) 425-2600
                                                           wharman@theharmanfirm.com
                                                           erivera@theharmanfirm.com

                                                           *Attorneys for Plaintiff*